**Gary N. SMITH, Appellant,**

v.

**UNIVERSITY OF ALASKA, FAIRBANKS, Appellee.**

No. S–12418.

Supreme Court of Alaska.

Dec. 21, 2007.

Allen F. Vacura, Fairbanks, for Appellant.

Constance Cates Ringstad, McConahy, Zimmerman & Wallace, Fairbanks, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

Gary Smith worked at the University of Alaska, Fairbanks (UAF) power plant for almost twenty years before he injured his

back at work in July 1999. He continued working for a little more than a week following the injury, hoping his back would improve. When it did not, he took his previously scheduled annual leave and filed a notice of injury with UAF. About three and a half weeks after the injury, he experienced extreme pain in his lower back and right leg when he tried to climb into his truck. Three days later the pain was so intense that he was admitted to the hospital and had surgery four days afterwards. UAF controverted all benefits on the basis of lack of causation. After a series of board and superior court decisions, the board ultimately decided that Smith had not proven his claim by a preponderance of the evidence. Because the board failed to explain its decision adequately, we vacate the board's decision and remand for further findings.

## II. FACTS AND PROCEEDINGS

Gary Smith began working at the UAF power plant in 1980. In 1993 and again in 1995 he had back surgery for medical problems that were not related to his work. Smith apparently had a good recovery from the surgeries, as he was able to perform his work without limitations for over three years.

About 6:45 a.m. on July 8, 1999, Smith assumed his duties as a shift engineer at the UAF power plant. The engineer who was leaving notified Smith that during the previous shift a filter had frozen up.[1] Smith sent his fireman, John Alderson, to put the filter back on line. While Alderson was working on the problem, Smith, who was in the control room, received an alarm indicating that the air pressure for the compressed air that operated the power plant's controls was too low. Smith tried to contact Alderson but was unable to do so. When he could not reach Alderson, he ran down to the basement to fix the problem himself because he was afraid that if he did not act quickly, he would lose the plant.

The stairs that Smith ran down were narrow and had a low ceiling. Smith had to make three turns when he descended from the control room to the basement, where the filter and some valves were located. To get down the steps without hitting his head, he had to duck and twist his head and back. When he jumped onto the first landing, he felt something pop in his back, but continued down the steps and opened a valve to start air flowing through the filter. He then went back upstairs to the control room, where the alarm had cleared. After he returned to the control room, Smith noticed that his back hurt whenever he moved forward or backward.

Smith's acting supervisor, Charles Ward, a mechanical engineer, arrived at work about 8:00 a.m. He found Smith in the control room, irate and in pain. Smith told Ward there had been an emergency and that he had hurt his back running down the stairs.

Smith continued to work until July 17, when he was scheduled to take annual leave.[2] Smith did not immediately seek medical attention for his back injury because he thought he had pulled a muscle. He took an anti-inflammatory and wore a back brace; he also curtailed his work activities. He phoned his family physician, told him that he had pulled a muscle in his back, and obtained a prescription over the phone for a muscle relaxant.

Smith had planned to spend his annual leave taking supplies to a hunting camp so that he and a friend could go hunting later in the year. He had to cancel these plans because of his back pain; instead, he stayed home. Smith was unable to do his yard work or cut firewood. His neighbors, the Highams, took care of his dog. Smith signed an injury report related to the back injury on July 23, 1999, which Ward signed on behalf of UAF on July 29.

Smith agreed to help Vern Higham take a boat to a nearby lake on August 2 to test it

1.  The malfunctioning filter cooled and dehumidified the compressed air that operated the power plant controls.

2.  Smith's normal work schedule was three twelve-hour shifts and one four-hour shift per week. At the time of his injury, his schedule was Wednesday from 11:00 a.m. to 3:00 p.m. and then Thursday through Saturday from 7:00 a.m. to 7:00 p.m.

out. Smith spent about forty-five minutes maneuvering his truck to line the hitch up with the ball on the boat trailer. He then put the trailer on the hitch; he experienced no increase in pain when moving the boat trailer. After driving about five miles to the lake, Smith waited while Higham tested the boat. After Higham left, Smith tried to get into his truck but began to experience excruciating pain in his back and leg. Smith waited to see if the pain would subside, but when he tried to get back into the truck, the pain flared up again. Smith flagged down a passer-by and asked him to call Higham. Higham picked Smith up and took him to the office of Dr. George Vrablik, the orthopedic surgeon who had performed Smith's previous back surgeries.

Dr. Vrablik recommended conservative treatment, gave Smith some pain medication, and sent him home with instructions to call the next day. Dr. Vrablik's chart notes indicated that Smith's back was "doing better" the next day, although Smith still had pain across the back. Dr. Vrablik prescribed a steroid and again instructed Smith to call him to report his progress.

On August 5 Smith experienced a sharp increase in his pain level. He was unable to stand; he had to dress lying down and crawl out his door and into a friend's truck for a trip to the emergency room. Smith was admitted to the hospital that day, where he was placed in traction. On August 8 Smith had a CT scan and an MRI, which showed scarring from his previous surgeries, as well as a disk herniation. The next day Dr. Vrablik operated on Smith's back; he described the surgery as one of the most difficult procedures he had ever done. Dr. Vrablik removed less disk material than he expected but was limited by concerns that he would damage Smith's nerves. Although the surgery improved Smith's symptoms, it was not a complete success. Smith continued to have some pain. Dr. Vrablik later concluded that Smith was unable to return to his work as a shift supervisor at the UAF power plant and rated Smith as having a fifteen percent whole person impairment.

UAF controverted all benefits in Smith's case on September 21, 1999. Smith filed a workers' compensation claim on November 2, 1999, seeking temporary total disability benefits from July 17 and continuing, as well as permanent partial impairment benefits, medical and transportation costs, penalties, and attorney's fees. UAF filed its answer on November 29.

The main point of contention in the board proceedings was the degree to which the July 8, 1999 injury to Smith's back caused the need for surgery the following month. Two medical doctors evaluated Smith: Dr. Vrablik and the employer's expert, Dr. John Ballard. Both doctors agreed that it was difficult to determine causation. Dr. Vrablik was unable to ascertain whether the back injury at the power plant caused the disk herniation or whether Smith herniated his disk in August when he was getting into his truck. His opinion in Smith's case was guarded because he did not examine Smith until August, after both incidents had happened. Dr. Vrablik's chart notes stated that both events were significant in causing the symptoms. At his deposition Dr. Vrablik elaborated that he had to rely on the history Smith gave him in determining what might have precipitated the symptoms. Because Smith considered the incident at the power plant to be significant, Dr. Vrablik also considered it significant. Dr. Vrablik also testified that based on Smith's history, both incidents were substantial factors.

Even though Dr. Vrablik was unwilling to say that Smith herniated his disk in July, he refused to ignore Smith's prior history when he discussed causation. Dr. Vrablik pointed out that a disk herniation can be caused by trivial things, like picking up a bar of soap or sneezing, in the sense that the trivial incident can be "the straw that broke the camel's back." However, a whole chain of causation may contribute to the herniation that is made symptomatic by the trivial event, and the "precipitating event" can be removed in time from the event that requires surgery. Dr. Vrablik was not able to say that it was probable that Smith's injury in July weakened his back so much that a minor movement later would have resulted in a disk herniation; he said that it was possible. He

testified that he could not pinpoint the cause of the disk herniation and stated:

> Now, if you want me to say what was the straw that broke the camel's back, getting into the truck was when he noticed the severe leg pain and when he had to have somebody help him. I—you know, that I think is reasonable because that's when his symptoms became worse.
>
> But I don't know that you can neglect to consider what happened at work, his previous back surgeries. All this contributes to it.

Dr. Ballard was less hesitant about offering an opinion about causation. He believed Smith's problems were caused primarily by the scar tissue from his previous surgeries. Dr. Ballard acknowledged that Smith injured his back running down the stairs at the power plant, but he thought that this resulted only in a strain to Smith's lower back. Dr. Ballard offered the opinion that Smith's condition was probably not related to the injury at the power plant. Dr. Ballard stated that in his opinion something happened to Smith between August 3, when he saw Dr. Vrablik to follow up on his visit of the day before, and August 5, when he was admitted to the hospital, to cause the scar tissue to become so symptomatic as to require surgery. He did not identify a likely cause, stating, "I do not believe it is necessary for scar tissue to become symptomatic from any specific event after a back has been operated on two times." In his March deposition Dr. Ballard admitted that the power plant injury "probably aggravated" Smith's back and might be a "small contributing factor" to the need for surgery. He denied that it was a substantial factor however. At his June deposition he was not able to say whether any of Smith's symptoms on August 2 were related to the power plant injury.

Dr. Vrablik disagreed with Dr. Ballard about the extent to which the scarring from the previous surgery could have caused Smith's symptoms in July or August. Dr. Vrablik stated that any epidural fibrosis[3] occurs within three months to a year from the time of surgery; because Smith's symptoms happened more than three years after the 1995 surgery, Dr. Vrablik did not consider the scar tissue "the precipitating event" in Smith's need for further surgery. He conceded that the scar tissue was a factor in Smith's disability, noting that "when the nerve elements are held tight by scar and fibrosis, it doesn't take much to put extra pressure on them."

The board held a hearing on Smith's claim on July 20, 2000. The panel was made up of two members.[4] Smith testified on his own behalf and called three lay witnesses: Charles Ward, John Alderson, and Vern Higham. The lay witnesses testified about Smith's pain after the injury in July and about the limitations on his activities between the time of the work injury and the surgery. Drs. Vrablik and Ballard testified by deposition. The two-member panel was unable to agree on a decision in Smith's case, so the board reopened the record to add a third member.[5]

The board issued its first decision on October 12, 2000. In it, the board found that Smith had attached the presumption of compensability through Dr. Vrablik's and his own testimony. It then found that UAF had not overcome the presumption of compensability. This finding was based on the board's analysis of Dr. Ballard's testimony. The board examined his testimony in some detail and concluded that it was ambiguous and contradictory; it found that UAF had not provided substantial evidence to rebut the presumption. From this it concluded that Smith's claim was compensable, reserving jurisdiction to resolve disputes about specific benefits owed to him. One panel member dissented. He would have found that UAF had rebutted the presumption of compensability based on Dr. Ballard's testimony and would

---

3. Epidural fibrosis is scarring from back surgery.

4. AS 23.30.005(a) requires that each board panel be composed of a hearing officer, a representative of industry, and a representative of labor. Two members of a panel are a quorum for hearing cases. AS 23.30.005(f).

5. A board regulation permits a member who did not attend the hearing to review the record and deliberate when a two-member panel is deadlocked. 8 Alaska Administrative Code (AAC) 45.070(k)(2)(A) (2006).

have denied Smith's claim because, in his opinion, Smith had not proven his claim by a preponderance of the evidence.

UAF appealed to the superior court. Relying on *Norcon, Inc. v. Alaska Workers' Compensation Board,*[6] the superior court decided that the board had improperly weighed the testimony of Dr. Ballard at the second stage and remanded the case to the board for a redetermination of whether UAF had rebutted the presumption. The superior court retained jurisdiction in case either side wanted to appeal the board's decision on remand.

On remand the board heard the case on the written record and issued its second decision on December 2, 2002. It evaluated Dr. Ballard's testimony again, relying this time on *Wollaston v. Schroeder Cutting, Inc.*[7] in its legal analysis. The board decided that Dr. Ballard's testimony as a whole was too ambiguous to meet any of the means of overcoming the presumption of compensability. It again found that UAF had not overcome the presumption of compensability and again declared that Smith's condition was compensable. One member again dissented. He acknowledged that Dr. Ballard's testimony varied as to his opinion of the cause of Smith's symptoms but concluded that Dr. Ballard had been consistent in his opinion that Smith's 1999 back surgery was the result of his preexisting back condition and not the result of the July injury. As a result, the dissenter reiterated his opinion that UAF had rebutted the presumption of compensability and that Smith had not proven his claim by a preponderance of the evidence.

UAF again appealed to the superior court. The superior court again reversed the board, determining this time that UAF had rebutted the presumption of compensability as a matter of law because its expert, Dr. Ballard, had given an opinion that Smith's need for surgery and his disability were not related to his injury at UAF on a more-probable-than-not basis. The superior court held that substantial evidence did not support the board's determination that UAF had not rebutted the presumption of compensability because

"[w]ithout weighing Dr. Ballard's credibility, a reasonable mind reading the record as a whole could not conclude that Dr. Ballard's testimony failed to rebut Smith's presumption." The superior court determined that the board had improperly weighed Dr. Ballard's testimony at the rebuttal stage and remanded the case to the board so that the board could determine whether Smith had proven his claim by a preponderance of the evidence. Its remand order stated that the board could "reject and weigh any testimony of any witnesses in determining whether Smith satisfie[d] his burden of persuasion."

On the second remand, a new panel member replaced one of the previous panel members. The board decided not to take additional evidence and again heard the case on the written record.

In its decision and order of March 11, 2005, the board denied Smith's claim for workers' compensation benefits. This time the board determined that Smith had not shown that his work caused his need for surgery and continuing treatment because "[n]o physician has stated, on a more-probable-than-not basis, the employee's work caused his need for surgery and continuing treatment." The decision made no explicit findings about witness credibility or the weight the board gave to the testimony of the two doctors. The board did not consider the lay testimony Smith offered, finding that the case involved highly technical medical issues so that the lay testimony had little probative value. One panel member dissented. He was in the majority in the two prior decisions, and he wrote in dissent that the board had found, on two occasions, that UAF had failed to provide substantial evidence to "eliminate the employee's injury as the cause of his present back condition." Noting that the facts had not changed and reiterating some of the findings from the previous two decisions in Smith's case, the dissent stated that it would find that Smith had proven his claim by a preponderance of the evidence.

Smith appealed to the superior court. The superior court affirmed the board's decision,

6. *Norcon, Inc. v. Alaska Workers' Comp. Bd.,* 880 P.2d 1051 (Alaska 1994).

7. *Wollaston v. Schroeder Cutting, Inc.,* 42 P.3d 1065 (Alaska 2002).

deciding that substantial evidence supported the board's decision and that it was "of little consequence" that the board did not rely "very heavily" on the lay testimony Smith presented.

Smith appeals.

## III. STANDARD OF REVIEW

When the superior court acts as an intermediate appellate court, we independently review the board's ruling.[8] Factual findings by the board are reviewed under the substantial evidence standard.[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] The board has the exclusive authority to determine witness credibility.[11] The board's exercise of its discretion is reviewed for abuse; an abuse of discretion occurs if this court is left with a "definite and firm conviction" that the decision reviewed was a mistake.[12]

## IV. DISCUSSION

The Alaska Workers' Compensation Act creates a presumption that an employee's claims are compensable.[13] Applying this presumption involves a three-step analysis.[14] First, the employee must establish a link between his injury and his employment.[15] In this case the board found that Smith had established a link between his injury at work and his disability through his own testimony and that of Dr. Vrablik. UAF did not contest this finding; the superior court stated that there was "no question" Smith attached the presumption.

Once the presumption attaches, the employer may rebut the presumption by presenting substantial evidence that (1) provides an alternative explanation which would exclude work-related factors as a substantial cause of the disability, or (2) directly eliminates any reasonable possibility that employment was a factor in causing the disability.[16] An employer has always been able to rebut the presumption by presenting the opinion of a qualified expert who testifies that in her opinion, the claimant's work was probably not a substantial cause of the disability.[17] The superior court decided that UAF rebutted the presumption as a matter of law. Smith does not contest the superior court's determination.

If an employer rebuts the presumption of compensability, the burden shifts to the employee to prove his claim by a preponderance of the evidence.[18] Here, the board found that Smith had not shown by a preponderance of the evidence that the back injury he sustained at work in July led to the need for surgery in August. It therefore denied and dismissed Smith's claim. In reaching its conclusion, the board found that it could not rely on the lay testimony to determine whether Smith's work injury was a substantial factor in his need for surgery and also noted that no physician had stated on a more-probable-than-not basis that Smith's work caused his need for surgery.

### A. The Board's Findings Are Inadequate To Permit Appellate Review.

Smith argues that the board made several errors in evaluating the evidence in his case. Specifically, Smith contends that

8. *DeYonge v. NANA/Marriott,* 1 P.3d 90, 94 (Alaska 2000).

9. *Circle De Lumber Co. v. Humphrey,* 130 P.3d 941, 946 (Alaska 2006).

10. *Id.* (quoting *Robertson v. Am. Mech., Inc.,* 54 P.3d 777, 779 (Alaska 2002)).

11. *Bradbury v. Chugach Elec. Ass'n,* 71 P.3d 901, 905 (Alaska 2003).

12. *Thoeni v. Consumer Elec. Servs.,* 151 P.3d 1249, 1253 (Alaska 2007) (quoting *Municipality of Anchorage v. Devon,* 124 P.3d 424, 429 (Alaska 2005)).

13. *Bradbury,* 71 P.3d at 905.

14. *Id.* (quoting *Temple v. Denali Princess Lodge,* 21 P.3d 813, 816 (Alaska 2001)).

15. *Id.*

16. *Id.* at 906.

17. *Id.* (citing *Big K Grocery v. Gibson,* 836 P.2d 941, 942 (Alaska 1992)).

18. *Id.*

the lay testimony he presented supports his claim and that the board erred in not evaluating it. He also insists that Dr. Ballard's testimony cannot constitute substantial evidence because it is contradictory and ambiguous. Smith asserts that Dr. Vrablik's testimony should be considered substantial evidence and that Dr. Vrablik's testimony supports Smith's claim for benefits. UAF responds that (1) Dr. Vrablik's testimony was inadequate to prove Smith's case; (2) Dr. Ballard's testimony is substantial evidence that supports the board's decision; and (3) the board could properly disregard the lay testimony Smith presented.

### 1. The board should make findings about the lay testimony.

In arguing that the board improperly disregarded the lay testimony, Smith maintains that the lay testimony in the case undercut Dr. Ballard's assumptions about Smith's recovery from the work-related injury and that these assumptions were important to Dr. Ballard's opinion. UAF's position is that the lay testimony had little probative value because of the complex medical issues in the case. It also contends that the board weighed the lay testimony and found it unreliable.

The board's decision stated:

Where claims involve "highly technical medical considerations," lay testimony has "little probative value." *Tinker v. Veco,* 913 P.2d 488, 494–95, fn. 9–10 (Alaska 1996). We find this case involves highly technical medical considerations, and that a determination of causation requires the production of a greater weight of medical evidence. As such, we find we cannot rely on the testimony of the employee, his friends and co-workers to determine whether the employee's industrial incident was a substantial factor in causing the employee to need his third back surgery in

August 1999. *See, also, Brown v. Patriot Maintenance,* 99 P.3d 544, 553 (Alaska 2004).

Based on this statement and the board's failure to mention the testimony of any of the lay witnesses except Smith, we are not able to determine whether the board correctly applied the law to Smith's case.

■■■■■ Lay testimony may be insufficient taken alone in a complex medical case to satisfy the preliminary link that an injury is work related or to rebut the presumption of compensability.[19] *Norcon, Inc. v. Alaska Workers' Compensation Board,* which UAF cites for support, repeats the rule that expert medical testimony may be necessary to establish a claim.[20] Nothing in *Norcon* suggests a general rule that lay testimony can be disregarded in a case with complex medical facts, however. Here, Smith did not rely on lay testimony alone in presenting his case to the board; Dr. Vrablik provided expert medical testimony on his behalf, and the board determined that Smith had attached the presumption in part through Dr. Vrablik's testimony. The question in Smith's case is the relevance of the lay testimony to his claim.

■■■ In some cases lay testimony has little probative value because it supports points that are not relevant to the determinations of the experts. We held in both *Ayele v. Unisea, Inc.*[21] and *Brown v. Patriot Maintenance, Inc.*[22] that the lay evidence presented was not material to the board's decision and as a result the board was not required to make findings about it. In *Ayele,* the issue presented was whether exposure to ammonia could trigger depression or related psychiatric disorders.[23] The lay testimony supported Ayele's claim that he had been exposed to ammonia, but the medical experts did not

---

**19.** *Burgess Constr. Co. v. Smallwood,* 623 P.2d 312, 316 (Alaska 1981). *But cf. Veco, Inc. v. Wolfer,* 693 P.2d 865, 870 (Alaska 1985) (noting that expert medical evidence is not always necessary to establish or rebut the presumption).

**20.** *Norcon, Inc. v. Alaska Workers' Comp. Bd.,* 880 P.2d 1051, 1055 (Alaska 1994).

**21.** *Ayele v. Unisea, Inc.,* 980 P.2d 955, 957 (Alaska 1999).

**22.** *Brown v. Patriot Maint., Inc.,* 99 P.3d 544, 551–52 (Alaska 2004).

**23.** *Ayele,* 980 P.2d at 958.

seriously question this fact.[24] Likewise, in *Brown*, "the lay witnesses described facts that the experts had already received—and for the most part accepted."[25] There the issue before the board was the connection between traumatic injury and the development of fibromyalgia; the experts disagreed about whether any traumatic injury could cause fibromyalgia.[26] Thus, the lay testimony about symptoms and the injury itself had no bearing on the experts' opinions; it did not "materially erode the medical opinions of physicians whose testimony the board chose to accept."[27]

At other times, though, lay evidence may be highly relevant, as when it tends to support or contradict the assumptions as to the facts of the claimant's history on which expert medical witnesses rely. For example, we determined in *Stephens v. ITT/Felec Services* that lay testimony was potentially important to the experts' opinions about causation because their opinions rested on assumptions about the claimant's work conditions, which the lay testimony addressed.[28] In *Stephens,* the board decided that a worker had not proven his claim that his heart attack was work related.[29] The employer's experts testified that Stephen's heart attack was not work related, but their opinions were based on assumptions about his work conditions.[30] They also testified that their opinions might change if information about work conditions was different from what they assumed.[31] Even though Stephens presented lay evidence about his work conditions, the board did not evaluate it.[32] We decided that we could not review the board's decision without knowing how the

board had evaluated the lay testimony and remanded the case to the board.[33]

Here, we are unable to determine from the board's decision whether it applied an incorrect legal rule—that lay testimony should be disregarded in complex medical cases—or considered the lay testimony and determined that in Smith's case it had little probative value. Because we are unable to determine whether the board considered the lay testimony, on remand the board should indicate whether it evaluated the lay testimony and what weight, if any, the lay testimony should have.

In Smith's case it is possible that the lay testimony could undermine Dr. Ballard's assumptions about the development and course of Smith's symptoms. Smith argues here that the lay testimony undermines Dr. Ballard's statement that Smith was "functioning with some low back pain" after his injury and had "temporarily aggravated" his back when he injured it at work.

Because neither doctor examined Smith between the July injury and the August visit to Dr. Vrablik, the lay testimony here may have more probative value than in other cases with uncertain medical causation. As Dr. Vrablik indicated in his deposition, he had to rely on the history Smith gave in assessing his condition and its causes because he did not see Smith until after both the July and August incidents.[34] The lay testimony arguably supported Smith's assertions about his increasing pain following the accident, which could be contrary to Dr. Ballard's analysis of the course of Smith's illness. While UAF is correct that the board alone is authorized to determine witness

24. *Id.*

25. *Brown,* 99 P.3d at 553.

26. *Id.* at 547.

27. *Id.* at 553.

28. *Stephens v. ITT/Felec Servs.,* 915 P.2d 620, 627 (Alaska 1996).

29. *Id.* at 627.

30. *Id.*

31. *Id.* at 625–26.

32. *Id.* at 627.

33. *Id.*

34. Dr. Vrablik's reliance on Smith in determining causation is not unique. The doctor whose opinion the board relied on in *Employers Commercial Union Co. v. Libor* indicated that the best way to establish a connection between two injuries would be to ask the patient how much back pain he had in the interim period. *Employers Commercial Union Co. v. Libor,* 536 P.2d 129, 131 (Alaska 1975).

credibility, there is a distinction between devaluing testimony because it has no probative value, even if true, and deciding that testimony is not credible.[35] The board made no explicit findings about credibility, so we are unable to say that the board made a determination that the lay witnesses in Smith's case were unreliable.[36]

Dr. Ballard also testified that differences in the location and intensity of pain distinguished disk herniation from stenosis; his testimony indicated that leg symptoms could suggest a herniated disk. He further testified about his experience with patients with symptomatic scar tissue. Smith's testimony and that of his lay witnesses described Smith's pain and the limitations on his activities. Because in this case it is possible that the lay testimony had some bearing on the experts' assumptions, the board on remand should consider the lay testimony insofar as it supports or detracts from the doctors' conclusions and make appropriate findings.

### 2. The board did not adequately analyze the medical testimony.

Smith argues that Dr. Vrablik's testimony constitutes substantial evidence to support his claim and that the board did not give it proper weight. UAF responds that Dr. Vrablik's testimony was not adequate to carry Smith's burden of proof. The board did not explicitly reject Dr. Vrablik's testimony; it stated that Dr. Vrablik agreed that Smith's condition probably changed in August, when he sought medical attention, rather than in July. The board also noted that Dr. Vrablik testified it was possible that the July injury contributed to his need for surgery, but he would not say it was probable. The board did not discuss Dr. Vrablik's opinion, based on Smith's history, that the injury was a significant or substantial factor in causing the need for surgery or that the work injury contributed to the recurrent disk herniation.

The board stated in its decision, "No physician has stated, on a more probable than not basis, the employee's work caused his need for surgery and continuing treatment. Therefore, we find the employee cannot prove his claim by a preponderance of the evidence." A statement by a physician using a probability formula is not required to establish employer liability in workers' compensation. As Larson remarks:

> The compensation process is not a game of "say the magic word," in which the rights of injured workers should depend on whether a witness happens to choose a form of words prescribed by a court or legislature. What counts is the real substance of what the witness intended to convey, and for this purpose there are more realistic approaches than a mere appeal to the dictionary.[37]

We noted our agreement with Larson in *Childs v. Copper Valley Electric Ass'n,* when we observed that the fact that a doctor did not state his opinion in absolute terms did not mean that his testimony was inconclusive or that he failed to exclude a cause of the claimant's condition.[38] We have also upheld compensation awards in the face of inconclusive medical testimony, particularly when lay testimony supported the award.[39]

We are unable to determine here whether the board applied an incorrect legal rule that would have required Smith to provide a physician's statement which used a term like "probability" in order to prove his claim. The absence of a definitive statement from a physician that the industrial accident caused

---

35. *Cf. Brown,* 99 P.3d at 553 (noting that experts had accepted facts described by lay witnesses, but facts were not material).

36. *Hoth v. Valley Constr.,* 671 P.2d 871, 874 n. 3 (Alaska 1983) ("Absent specific findings by the Board that it chose to disbelieve a witness's testimony, we will not assume that lack of credibility was a relevant factor in the Board's decision.").

37. 8 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 130.06[2][e] (2006).

38. *Childs v. Copper Valley Elec. Ass'n,* 860 P.2d 1184, 1189 (Alaska 1993) (citing 3 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 80.32, at 15–834 to –835 (1992)); *see also Safeway, Inc. v. Mackey,* 965 P.2d 22, 27 (Alaska 1998) (stating that "merely reciting the proper words as an opinion is not necessarily enough to rebut the presumption of compensability").

39. *Libor,* 536 P.2d at 132; *Beauchamp v. Employers Liab. Assurance Corp.,* 477 P.2d 993, 996–97 (Alaska 1970).

Smith's need for surgery, on a more-probable-than-not basis, may be an important factor for the board in making its ultimate decision, but lack of such a statement is not necessarily fatal to a workers' compensation claim.

Our holding here is distinct from *Lindhag v. State, Department of Natural Resources*, where we rejected the employee's argument that the board had failed to make adequate findings.[40] In *Lindhag*, the board explicitly accepted the testimony of the second independent medical evaluation physician, finding that he had more relevant training and had provided a more complete picture of the claimant's illness.[41] Here, the board did not credit the testimony of one doctor over the other and appears to have relied on the conclusions of both doctors in reaching its decision.

Moreover, the board may have overlooked or misinterpreted Dr. Vrablik's testimony about causation. Dr. Vrablik testified that both the work-related injury and the incident of getting into the truck were significant in causing Smith's need for back surgery in August 1999. He also stated that, based on Smith's history, they were both substantial factors. Although Dr. Vrablik said that a recurrent disk herniation can result from trivial things, he observed that a person cannot ignore the patient's prior history in determining causation either. It is not clear that the board considered Dr. Vrablik's opinion that the industrial accident was a significant cause of the need for surgery. On remand, the board should clarify the weight it accorded the lack of a definitive statement.

**B. The Board Did Not Abuse Its Discretion by Following the Superior Court's Remand Order.**

Smith asserts that the board abused its discretion in finding that his claim was not compensable. His claim that the board abused its discretion centers around the board's reversal of course in its assessment of Dr. Ballard's testimony and its reliance on what he terms Dr. Ballard's insubstantial testimony.

The board was free on remand to reconsider the issue of Dr. Ballard's credibility. After the superior court determined as a matter of law that UAF had rebutted the presumption of compensability, it remanded the case to the board for a determination of whether Smith had proven his claim by a preponderance of the evidence. In its remand order, the superior court stated, "[T]he AWCB may reject and weigh any testimony of any witnesses in determining whether Smith satisfies his burden of persuasion."

When a reviewing court remands a case to an administrative agency, the agency is bound to follow the court's order and may correct or revisit issues that were not decided by the reviewing court.[42] Here, the superior court made a legal determination that Dr. Ballard's testimony, without weighing it, provided adequate evidence to rebut the presumption of compensability. In so deciding, the superior court found that the board had committed a legal error in weighing Dr. Ballard's testimony at the rebuttal stage. More importantly, the superior court explicitly told the board that it could reweigh the evidence on remand. Smith's argument asks us to hold that the board abused its discretion by following the mandate of the superior court. We decline to do so.

Smith's other arguments lack merit. He maintains that Dr. Vrablik's testimony is

---

**40.** *Lindhag v. State, Dep't of Natural Res.*, 123 P.3d 948, 953–55 (Alaska 2005).

**41.** *Id.* at 954.

**42.** *Scott v. Mason Coal Co.*, 289 F.3d 263, 267–68 (4th Cir.2002); *City of Hampton v. Iowa Civil Rights Comm'n*, 554 N.W.2d 532, 535 (Iowa 1996) (holding that "unless the order to an agency provides otherwise a remand is general and the agency is free to address the claim anew");

see also *Reier v. State, Dep't of Assessments & Taxation*, 397 Md. 2, 915 A.2d 970, 983–84 (App. 2007) (upholding agency findings on remand that differed from initial agency findings); *Armstrong v. Employment Div.*, 113 Or.App. 257, 832 P.2d 1233, 1235 (1992) (holding that administrative agency could change its findings on remand because appellate court did not circumscribe agency's authority); 2 AM.JUR.2D *Administrative Law* § 576 (2004).

entitled to greater weight than Dr. Ballard's because of Dr. Vrablik's greater knowledge of Smith's case and longer career as a physician. The board did not explicitly credit the testimony of one doctor over the other; it appears to have relied on both doctors in making its decision. Nonetheless, we have previously refused to adopt a general rule in workers' compensation cases that a treating physician's opinion is entitled to greater weight than the opinion of an employer's expert.[43] The board alone is charged with determining the weight it will give to medical reports.[44]

▮▮▮▮ Smith also argues that Dr. Ballard's testimony is not substantial evidence on which the board could rely to deny his claim. He contends that Dr. Ballard's testimony was contradictory and ambiguous and asks us to determine that it was insubstantial. Smith's arguments are really directed at issues of Dr. Ballard's credibility, which is a question related to the weight of evidence. Whether the quantum of evidence presented is substantial is a question of law.[45] This is akin to a determination that there is sufficient evidence available for the board to make a decision. A legal determination that the evidence is sufficient to support a proposition is distinct from assigning weight to a particular piece of evidence.[46] Findings related to weight are within the province of the fact-finder, which is the board in workers' compensation cases.[47]

▮▮▮ Our rule that inconclusive and ambiguous testimony is construed in favor of the applicant applies at the rebuttal stage, when the board is charged with determining whether the employer has presented sufficient evidence to rebut the presumption of compensability.[48] Here, the superior court determined as a matter of law that UAF had presented sufficient evidence to rebut the presumption of compensability. Smith did not attempt to have this determination reviewed in an interlocutory appeal, and he did not question the holding in his points on appeal in this case. If the evidence UAF presented was sufficient to rebut the presumption of compensability, without being weighed, it could be sufficient to support a denial of Smith's claim if the board accorded it weight.[49]

## V. CONCLUSION

This is a case with medical uncertainty as to causation. The board's decision is inadequate to permit appellate review because we are unable to determine whether it applied incorrect legal rules and whether it considered all of the relevant evidence. We therefore VACATE the board's decision denying Smith's claim and REMAND the case to the board for further findings consistent with this opinion.

BRYNER, Justice, not participating.

43. *Safeway,* 965 P.2d at 29.

44. AS 23.30.122.

45. *Veco, Inc. v. Wolfer,* 693 P.2d 865, 869 (Alaska 1985) (quoting *Fireman's Fund Am. Ins. Cos. v. Gomes,* 544 P.2d 1013, 1015 (Alaska 1976)).

46. *See Fireman's Fund,* 544 P.2d at 1015 n. 6.

47. AS 23.30.122.

48. *Bouse v. Fireman's Fund Ins. Co.,* 932 P.2d 222, 235 (Alaska 1997) ("When medical testimony offered to rebut the presumption is uncertain or inconclusive, the presumption of compensability is not overcome."); *Miller v. ITT Arctic Servs.,* 577 P.2d 1044, 1048–49 (Alaska 1978). *But see Brown,* 99 P.3d at 548–50; *Fairbanks N. Star Borough v. Rogers & Babler,* 747 P.2d 528, 534 (Alaska 1987); *Beauchamp,* 477 P.2d at 997. We also note that this rule does not apply if an expert gives an explicit opinion that the industrial accident is not a substantial cause of the disability. *See Stephens v. ITT/Felec Servs.,* 915 P.2d 620, 625–26 (Alaska 1996) (citing *Big K Grocery v. Gibson,* 836 P.2d 941, 942 (Alaska 1992)).

49. *See Cowen v. Wal-Mart,* 93 P.3d 420, 426 (Alaska 2004) (noting that "the evidence that was sufficient to rebut the presumption of compensability was also sufficient to support the board's determination" as to the preponderance of the evidence).