Fabe, Justice,
dissenting.
I disagree with the court’s determination that substantial evidence in the record supports the denial of Shirley Shea’s occupational disability claim. Superior Court Judge Philip R. Volland correctly concluded that key facts in the administrative decision are either irrelevant to the ultimate question of proximate cause or simply not supported by evidence in the record. I would therefore affirm Judge Volland’s decision reversing the administrative denial of benefits.
The only question decided adversely to Shea by the administrative law judge was proximate cause, and the ALJ limited his adverse finding to one part of proximate cause, which he called the “ Attach Responsibility’ requirement.” The ALJ agreed with Shea that she had carried her burden of proving that, but for her work at the State, she “would not have experienced disabling chronic pain in 2001,” the year she became unable to work. But the ALJ rejected Shea’s claim that her work was a proximate cause based on the ALJ’s view that the group of people who would not “consider prolonged sitting at work so significant and important a catise as to attach legal responsibility for” the disability was “larger” than the group who would. The ALJ evidently counted himself among the former group and discussed the evidence he relied on to reject Shea’s claim. But not all of the evidence relied on by the ALJ was substantial; Some was speculative or nonexistent. And much evidence relied on by the court in today’s opinion either does not reflect the correct legal standard or is not related to the issues disputed in the case. This evidence cannot serve as substantial evidence to support the finding about proximate cause.
Legal framework
The court sets out the statutory definition of “occupational disability” and cites our case law holding that an employee can qualify for occupational disability benefits when an occupational hazard causes an increase in symptoms, even if it does not cause a worsening of the underlying condition itself. Under the statute and our case law on aggravation, Shea had to show that it was more likely true than not[1] that “a hazard undergone, while in the performance and within the scope of [her] duties” was a proximate cause of a physical condition that “presumably permanently prevents [her] from satisfactorily per *536 forming [her] usual duties”[2] The statute uses the phrase “presumably permanently” only to modify the duration of an employee’s inability to perform her job functions, not to measure the impact on a condition or symptom.[3] The State does not contest that Shea is permanently precluded from performing the usual duties of her job.
The “hazard” for. Shea was sitting, which she alleged aggravated her pain from the ilioinguinal neuralgia diagnosed by her doctors. In the first administrative decision, the ALJ wrote that “both parties agree that the primary cause of [Shea’s] disability is a neurological injury incurred in 1984 that became disabling during the time Ms. Shea was working for the State of Alaska.” The ALJ also wrote in that decision that “the preponderance of the evidence is that [Shea] suffered some form of injury to her ilioinguinal nerve in the course of the 1984 procedure, resulting in long-term unresolved ilioinguinal neuralgia.” That finding was not appealed, and in the State’s brief in the current appeal, it asserts that “[i]n Dr. Beard’s expert medical opinion, Shea’s pain was not work-related, but was caused by her 1984 ... procedure.” The ALJ referred to the neurological injury only as ilioinguinal neuralgia, and the ALJ also noted that the State “did not attempt to prove that Ms. Shea’s pain was a psychological response to the original non-work-related ilioinguinal neuralgia and as such was not proximately caused by her employment.” The ALJ’s words do not suggest that the parties “raised a dispute about the etiology of Shea’s current symptoms.” To the contrary, the ALJ’s decision demonstrates that the question of the etiology of Shea’s symptoms was not an issue on remand.
Neither party disputed that Shea was disabled from working. As the ALJ said in the first decision, the only dispute was “whether the prolonged periods of sitting were a substantial factor in her disability.”[4] To show that prolonged sitting was a proximate cause of her disability, Shea only needed to show that prolonged sitting was a proximate cause of her increased pain.
We have previously observed that “increased pain or other symptoms can be as disabling as deterioration of the underlying disease itself,” and we have rejected a distinction between worsening of an underlying condition and worsening of the symptoms.[5] Elaborating on the question of increased symptoms in the context of workers’ compensation, we recognized that “when a job worsens an employee’s symptoms such that she can no longer perform her job functions, that constitutes an ‘aggravation’ — even when the job does not actually worsen the underlying condition.”[6] The question is not, as the court puts it in its opinion today, “whether prolonged sitting in some way precipitated or worsened the symptoms or the underlying disease process on a ‘presumably perma-nente ]’ basis.” Instead the question is whether the hazard Shea underwent at work worsened her symptoms to such an extent that she was permanently precluded from performing her job duties.[7] She could demonstrate this not only by showing that sitting at work permanently caused an increase in her baseline pain, but also by showing that sitting at work increased her pain to such an extent that she could not perform her work and that this circumstance was permanent— that it would not improve.[8] Shea presented evidence supporting both propositions.
*537 Administrative decision on appeal in this case
The ALJ decided on remand that Shea had proved but-for causation but had not shown that sitting at work was so significant a factor in her disability that reasonable persons would consider it a cause and attach responsibility to it. In reaching that decision, the ALJ acknowledged that Shea had presented substantial evidence that her work was a substantial factor in causing her disability, and he specifically identified the following evidence to support this statement: Dr. Smith’s opinion “that prolonged- sitting aggravated a physical condition and her pain symptoms,” coupled with the increase in Shea’s pain symptoms while she worked for the State and the evidence that Shea “sat for prolonged periods of time while working a,nd found it painful.”
The ALJ then listed the six pieces of “substantial evidence” that countered Shea’s proof; that list is set out in the court’s opinion. The ALJ discussed separately the evidence that persuaded him Shea had not shown that work was so significant a cause in her disability that he would attach legal responsibility to it. The ALJ’s discussion focused on the manner in which Dr. Beard’s opinion differed from Dr. Smith’s and the timing of Shea’s reports regarding her pain, although he mentioned other factors as well.
The ALJ examined testimony of the two doctors whose opinions he had given the most weight, Dr. Smith and Dr. Beard. The ALJ acknowledged that Dr. Beard’s opinion about aggravation was based on an incorrect legal standard and “did not directly rebut Dr. Smith’s opinion as to aggravation of chronic pain,”[9] The ALJ stated that Dr. Beard’s “testimony, in substance, was to the effect that Ms. Shea’s ilioinguinal neuralgia had resolved.” The ALJ reasoned that this aspect of Dr. Beard’s opinion “weaken[ed] the basis for [Dr. Smith’s] opinion, which was that ... [the] [ ]ilioinguinal neuralgia[] had not resolved.” (Emphasis in original.) Notably, the ALJ did not infer from Dr. Beard’s testimony that something other than the ilioinguinal neuralgia was the underlying cause of Shea’s chronic pain. Citing Smith v. University of Alaska, Fairbanks,[10] the ALJ commented that Dr, Beard’s testimony “has some persuasive weight even in the absence of a definitive statement applying the correct legal standard.” But nothing in the ALJ’s discussion even hints at a finding “that Dr. Beard’s testimony raised a dispute concerning the etiology of Shea’s current symptoms.” Yet, the court insists that the ALJ found “that Dr. Beard’s testimony raised a dispute concerning the etiology of Shea’s current symptoms” and “found there was dispute between the doctors concerning the underlying cause of Shea’s disability,” but the administrative decisions simply do not support this assertion. In discussing the “ ‘Attach Responsibility requirement,” the ALJ wrote;
In this case, Dr. Smith was of the opinion that prolonged sitting at work aggravated Ms. Shea’s chronic pain. Dr, Beard’s opinion was couched in terms of the underlying physical condition, and thus did not directly rebut Dr. Smith’s opinion. Nonetheless, Dr. Beard’s testimony provides support for the view that prolonged sitting at work was not a substantial factor in Ms. Shea’s disability, because her testimony, in substance, was to the effect that Ms. Shea’s ilioinguinal neuralgia had resolved. Thus, while Dr., Beard did not directly rebut Dr. Smith’s opinion as to aggravation of chronic pain, her testimony weakens the basis for his opinion, which was that Ms. Shea’s underlying physical condition (ilioin-guinal neuralgia) had not resolved. In light of Dr. Beard’s testimony, Dr. Smith’s opinion that Ms, Shea’s chronic pain was work-related is only marginally peesuasive.[11]
The ALJ did not attempt to reconcile his interpretation of Dr. Beard’s testimony with his statement in the initial decision that “the *538 preponderance of the evidence is that [Shea] suffered some form of injury to her ilioingui-nal nerve in the course of the 1984 procedure, resulting in long-term unresolved ilioin-guinal neuralgia.”
The ALJ also discussed at length his reasoning related to Shea’s reports about the impact of sitting at work. A cracial aspect of the ALJ’s analysis was his concern that Shea had not reported to her physicians that prolonged sitting at work was causing her pain to increase. According to the ALJ, “[a] claimant’s reported perception of pain and the activities that generate it, made for the purpose of assisting in the diagnosis and treatment of that pain, is important evidence of the cause of that pain.” The ALJ then wrote that “reasonable persons will consider whether the claimant reported a work injury as a source of pain during the period of employment, and, if not, whether there is a reasonable explanation for the failure to do so.” (Emphasis added.) The ALJ then found the following (as later revised):
In this case, Ms. Shea did not identify sitting as a causal factor until 1999, and she did not identify sitting at work as a causal factor until two years after she retired, in 2003.... [T]he alleged relationship between her working conditions and the disability is one that Ms. Shea might reasonably be expected to have identified through direct personal experience, and to tell her treating physician: “It hurts when I sit for a prolonged period of time” Under these circumstances, that Ms, Shea did not report to a physician prolonged sitting at work as contributing to her chronic pain while she was still employed suggests that prolonged sitting at work was not so significant and important a cause as to attach legal responsibility to her employer.[12]
The ALJ cited the fact that Shea had “not reported] to a physician working conditions as contributing to her pain until after she had stopped working” and “evidence that the ilioinguinal neuralgia had resolved and that psychological factors may have contributed to her disability” as supporting his conclusion that Shea had not shown that reasonable persons would attach legal responsibility to her employer for her disability. Because the ALJ focused on these two reasons to reject Shea’s claim, and because the ALJ acknowledged that reasonable people could also conclude that Shea’s work was a legal cause of her disability, the factual underpinnings of his main reasons must be examined in detail.
Reporting work-related sitting to a physician
With regard to Shea’s report of sitting as a cause of her pain, the record shows that Shea did just what the ALJ said she was “reasonably expected to do.” She reported to her treating physicians, beginning in 1999, that sitting was causing her increased pain,[13] The ALJ notably failed to discuss “the reasonable explanation” for her failure to report employment-specific prolonged sitting to her doctors: She had discussed the problem with her supervisor at work, and the employer was taking steps to address the problem. From the point of view of medical diagnosis and treatment, prolonged sitting at work is not reasonably distinguishable from prolonged sitting in general except that the worker may have less control over varying her activity or work conditions, such as the type of chair she uses. If an employer is attempting to address those conditions, as Shea’s supervisor was, a physician does not really need to know for purposes of diagnosis and treatment whether the prolonged sitting is happening at work or elsewhere. Because Shea’s supervisor was working with her to address her increased pain at work, Shea had no need to report her work conditions to her doctor, particularly in light of her earlier report to her physicians that sitting increased her pain. As the superi- or court observed, Shea’s reports to her supervisor indicate “that she knew [sitting] was *539 a factor in what caused her pain.” Thus, I agree with the superior court that Shea’s failure to report to a physician that prolonged sitting at work was causing increased pain was “not particularly convincing evidence” that could serve to undermine the evidence supporting Shea.[14]
Dr. Beard’s testimony
The ALJ cited Dr. Beard’s testimony “to the effect that Ms. Shea’s ilioinguinal neuralgia had resolved” to support his ultimate conclusion and to counter Dr. Smith’s opinion that prolonged sitting at work probably did increase Shea’s pain.[15] The superior court carefully examined the portion of Dr. Beard’s testimony that the ALJ relied on and concluded, correctly in my view, that this testimony did not support a finding that the ilioinguinal neuralgia had resolved. Dr. Beard testified that Shea “had just recently been evaluated ... and diagnosed with that condition” at the time of Dr. Beard’s examination. Dr. Beard then testified that Shea’s disability is “really chronic pain,” where a patient stops seeking treatment for the underlying condition and instead seeks treatment for the pain. This testimony does not support a finding that the ilioinguinal neuralgia had resolved. And, as the ALJ pointed out, the State “did not attempt to prove that Ms. Shea’s pain was a psychological response to the original nonwork-related ilioinguinal neuralgia and as such was not proximately caused by her employment.”
The superior court considered other parts of Dr. Beard’s testimony, to the effect that the duration of Shea’s symptoms “would not be typical” if the neuralgia was caused by the earlier surgery because ilioinguinal neuralgia eases usually “resolve relatively quickly.” But, as the superior court correctly determined, this testimony does not show that Shea’s neuralgia had resolved: Rather, “it shows either that (1) Shea’s condition was atypical, or (2) something else was causing her pain.” Because the ALJ incorrectly inferred that Shea’s neuralgia had resolved in order to discredit Dr. Smith’s opinion about causation, the superior court correctly discounted this part of the ALJ’s decision.
The court takes the position that the ALJ made the latter inference and “did find that Dr. Beard’s testimony raised a dispute concerning the etiology of Shea’s current symptoms and that her pain could be caused by something other than ilioinguinal neuralgia substantially aggravated by work requirements.” But nothing in the ALJ’s opinion supports the court’s assertion that “the etiology of Shea’s current symptoms” was in question; this assertion is flatly contradicted by the ALJ’s earlier finding, based on the preponderance of the evidence, that Shea’s 1984 procedure “result[ed] in long-term unresolved ilioinguinal neuralgia.” The relevant material and contested issue was not the etiology of Shea’s symptoms; if that issue was contested, the ALJ resolved it in the first decision. The contested question was narrower: By the time the ALJ discussed this portion of Dr. Beard’s testimony, the only unresolved question was whether sitting at work was so important a cause in Shea’s pain that reasonable persons would regard it as a cause and attach responsibility to it. The ALJ had already determined that sitting was a but-for cause — that “but for periods of prolonged sitting at work, Ms. Shea would not have been disabled in 2001.”
Rather than focusing on this narrow question, the court claims that the ALJ “did find that Dr. Beard’s testimony raised a dispute *540 about the etiology of Shea’s current symptoms.” But as set out above, the ALJ described Dr. Beard’s testimony as testimony that the “ilioinguinal neuralgia had resolved.” The court points to no evidence or testimony to show that the inference the ALJ actually made is supported by substantial evidence, and as a result, this “evidence” cannot be a basis for the court or the ALJ to discount Dr. Smith’s opinion. And the ALJ said Dr. Beard’s testimony undercut Dr. Smith’s because “her testimony weakens the basis for his opinion, which was that Ms. Shea’s underlying physical condition (ilioinguinal neuralgia) had not resolved,” (emphasis in original) not because the testimony pointed to an alternative cause for the pain.
Furthermore, if Dr. Beard’s testimony posited another medical condition that might have been the underlying cause of Shea’s pain and inability to work, that testimony was not relevant. According to the State “[i]n Dr.- Beard’s expert medical opinion, Shea’s pain was not work-related, but was caused by her 1984 ... procedure.” And in the context of his discussion of but-for causation, the ALJ wrote that the State “did not establish an alternative explanation, supported by an expert medical opinion, as to why [Shea] began to experience disabling pain during her employment.” He acknowledged “evidence that psychological factors contributed to Ms. Shea’s disability” but also wrote that the State “did not attempt to prove that Ms. Shea’s pain was a psychological response to the original non-work-related ilioinguinal neuralgia and as such was not proximately caused by her employment.” Because the factual issue regarding the etiology of Shea’s pain was either uncontested or had been resolved in Shea’s favor, if Dr. Beard’s testimony supported an inference that something other than .ilioinguinal neuralgia was causing the pain, that factual inference was not legally relevant.[16] Because substantial evidence must be relevant evidence,[17] the inference the court today attributes to the ALJ — that “Dr. Beard’s testimony raised a dispute concerning the etiology of Shea’s current symptoms” — is not substantial evidence because it did not make more or less likely the existence of a material fact. In discussing legal cause, the ALJ made no inferences as to other possible causes of Shea’s chronic pain because the possibility of other possible causes was not contested.
The other part of Dr. Beard’s testimony that the ALJ relied on was her opinion that psychological factors may have contributed to Shea’s disability. While the superior court agreed that substantial evidence supported the ALJ’s “tepid” finding that psychological factors “may have contributed to Shea’s disability” (emphasis in original), the superior court also highlighted Dr. Beard’s testimony that there was no psychological evaluation of Shea, making impossible a determination of the degree to which psychological factors were involved.[18] I agree with the superior court’s conclusion that this finding has no bearing on the ultimate question of causation because there was no evidence beyond the speculative possibility that psychological factors were at play. We have held in a variety of contexts that speculation is not substantial evidence.[19] The State agreed, and continues *541 to agree, that the underlying basis of Shea’s pain was a neurological injury in 1984, which the ALJ repeatedly characterized as ilioin-guinal neuralgia. The only contested issue was causation; if the State’s theory of the case was that something other than pain related to the ilioinguinal neuralgia was Shea’s underlying medical condition, that theory of the case was not apparent to the ALJ. And it cannot be an alternative theory the court can use to affirm the ALJ’s decision because it would require additional fact finding.[20] While the court contends that “the State’s ‘theory of the ease’ did not have to include an alternative diagnosis” in order for the ALJ to find that Shea had not met her burden of proof, the court cannot manufacture a dispute about the evidence and make alternative findings that the fact-finder did not make in order to affirm.[21] Nothing in the ALJ’s decisions supports the court’s statements that a dispute regarding the existence of ilioinguinal neuralgia was the reason the ALJ found against Shea on the question of legal cause.
In sum, Dr. Beard’s testimony did not contain the “evidence” the ALJ considered so substantial as to undercut what the ALJ conceded was adequate proof of causation by Shea. And her speculation that psychological factors were a factor is not substantial evidence.
Other factors
The other two factors identified by the ALJ as important to his decision about legal responsibility were (1) Dr. Smith’s testimony that “the aggravation of [Shea’s] chronic pain symptoms due to prolonged sitting was limited to 5-10%” and (2) evidence that “ordinary daily activities also aggravated her chronic pain.” But evidence about the impact of ordinary daily activities is not persuasive evidence to undermine Shea’s claim, particularly in light of the ALJ’s finding that her daily activities did not change during the time she became increasingly disabled and, eventually, unable to perform her work. I agree with the superior court that these two findings are contradictory.
The amount of aggravation attributed by Dr. Smith to an “over time” worsening of Shea’s chronic pain was five to ten percent; he indicted that Shea could experience increased pain while sitting, after which her pain would return to baseline. Quoting part of the statute out of context, the court contends that “the relevant inquiry is whether prolonged sitting in some way precipitated or worsened the symptoms or the underlying disease process on a ‘presumably perma-nente ]’ basis.” But that is not what the statute says: AS 39.35.680(27) refers to “a physical or mental condition, that in the judgment of the administrator, presumably permanently prevente an employee from satisfactorily performing the employee’s usual duties.” An employee’s inability to perform her work is what must be permanently precluded. Requiring a permanent worsening of baseline pain is no different from requiring a permanent worsening of an employee’s condition. The court’s misstatement of the statute is essentially a reformulation of a distinction we rejected.[22] And Dr, Smith’s testimony showed that sitting at work both increased Shea’s pain while she was working and furthered her permanent disabling pain by increasing her baseline level of pain over time. Dr. Smith also testified that there was no cure for Shea’s pain. In spite of efforts by Shea’s employer to ameliorate the working *542 conditions that increased her pain, by the time Shea’s employment with the State ended, her baseline pain had increased to the point where that pain made completing her work impossible.
The court also argues that Dr. Smith’s opinion, standing alone, was sufficient to defeat Shea’s claim because he testified that prolonged sitting would permanently increase Shea’s pain by five to ten percent, and Shea II “leaves room for such a finding.” Shea II permits the opposite conclusion as well,[23] and the ALJ did not rely exclusively on Dr. Smith’s opinion to find against Shea, instead listing it as one of many pieces of evidence he weighed. Indeed, the reason the ALJ gave for considering factors such as Shea’s reports to her physicians was “the close balance in the expert medical testimony.” In other words, the ALJ did not find Dr. Smith’s opinion persuasive on the point as the court suggests.
A detailed examination of the reasons given by the ALJ for rejecting Shea’s claim demonstrates that substantial evidence in the record does not support his conclusions.
Causation overall
In his summary about the overall question of causation, the ALJ wrote that Dr. Smith’s opinion alone was insufficient to “establish that prolonged sitting was a substantial factor in [Shea’s] disability.” But the ALJ concluded that Dr. Smith’s opinion in combination with two other factors was “substantial evidence that prolonged sitting at work was a substantial factor in her disability.” The ALJ also listed evidence that, in his view, undercut Shea’s case, including evidence that Shea did not “identify sitting as a causal factor until February, 1999, after her symptoms had become highly problematic.” But this evidence is consistent with Dr. Smith’s opinion that “over time” prolonged sitting would cause Shea’s baseline pain to increase by five to ten percent. Shea’s job with the State, which required prolonged sitting, began in 1993, and it was following the six year’s from 1993 to 1999 that Shea identified prolonged sitting as causing increased pain.
The ALJ listed “Dr. Beard’s expert medical opinion that prolonged sitting did not permanently aggravate the underlying physical condition” as “substantial evidence that prolonged sitting at work was not a substantial factor in Ms. Shea’s disability,” even though the ALJ later acknowledged that this opinion appeared not to apply the correct legal standard. Relying on our opinion in Smith v. University of Alaska, Fairbanks,[24] the ALJ wrote that Dr. Beard’s “testimony has some persuasive weight even in the absence of a definitive statement applying the correct legal standard.” But Smith has no relationship to Dr. Beard’s opinion about aggravation. There is no indication that the doctor’s testimony in Smith used an incorrect legal standard; rather, the testimony did not, in the Board’s view, use an adequately specific probability formula.[25] In contrast, Dr. Beard gave a definite statement using an incorrect legal definition of aggravation, testifying that she meant “to cause a permanent worsening or flare of [the] condition,” which she identified as ilioinguinal neuralgia. Smith does not license reliance on an expert opinion that has the wrong legal standard as its basis. And if the ALJ intended to refer to the quotation in Smith from Larson’s treatise— to the effect that a fact finder should consider “the real substance of what the witness intended to convey” rather than engage in “a game of ‘say the magic word’ ”[26] — that quote does not endorse use of an incorrect legal standard. Moreover, when the ALJ discussed the substance of Dr. Beard’s opinion, he focused on the inference that Shea’s ilioingui-nal neuralgia had resolved. As set out earlier, that inference is not supported by the record.
*543 In his final analysis, Judge Volland correctly concluded that the ALJ made contradictory findings in accepting Dr. Smith’s opinion to find “but for” cause but discrediting the same opinion when analyzing proximate cause. The ALJ found that, after Shea began to work for the State, her “level of pain was substantially greater, even though her everyday activities did not change (except in response to pain).” This fact, in conjunction with Dr. Smith’s expert opinion that it was at least 51% likely that prolonged sitting aggravated Shea’s injury, led the ALJ to find that Shea had established that, “but for” her State employment, her condition would not have worsened. As the superior court wrote, “If Shea’s daily activities remained unchanged and sitting was a 51% cause, it cannot be said that the daily activities defeat proximate cause.” The ALJ credited Dr. Smith’s testimony to find “but for” cause, and I agree with the superior court that “[t]he ALJ cannot find on one hand that Dr. Smith’s testimony was substantial evidence establishing actual cause but not substantial evidence supporting the causal component of proximate cause.”
The evidence relied on by the ALJ to deny Shea’s claim was either incomplete or irrelevant to the question of proximate cause. And the court’s current theoiy of the case is significantly different from the decision on review or the State’s litigation position and does not apply the legal standard we have previously adopted for aggravation claims. I therefore respectfully dissent from the court’s opinion and would affirm Judge Vol-land’s decision reversing the ALJ’s decision.

. See In re J.A., 962 P.2d 173, 177 (Alaska 1998) (equating preponderance of the evidence with "more likely than not”); id. at 181 (Matthews, J., dissenting) (stating that "customary civil preponderance-of-the-evidence standard ... requires the trier of fact to find that something is more likely than not true”).

. AS 39.35.680(27).

. Id.

. Although our decision in Shea II permitted the ALJ to reevaluate the evidence as he deemed necessary, in the Decision on Remand the ALJ explicitly stated that he made no new findings of fact "except insofar as whether prolonged sitting at work was a substantial factor in Ms. Shea's disability is an issue of fact,"

. Hester v. Pub. Emps.' Ret. Bd., 817 P.2d 472, 476 n.7 (Alaska 1991).

. DeYonge v. NANA/Marriott, 1 P.3d 90, 96 (Alaska 2000) (discussing Hester).

. AS 39.35.680(27).

. The ALJ recognized the connection between job requirements and disabling symptoms when he observed that "[a]bsent some reason to believe that a change to a comparable position or job will alleviate or eliminate the disabling symptoms, employers and employees have no incentive to investigate available alternatives.”

. The court attempts to minimize Dr. Beard’s use of the incorrect standard by saying it "was relevant only to her ‘opinion as to causation.' " But causation was the sole issue on remand and is the issue on appeal. The ALJ explicitly said that “Dr. Beard's opinion as to causation was somewhat less persuasive than Dr. Smith’s” (emphasis added) because she used the incorrect legal standard.

. 172 P.3d 782, 791 (Alaska 2007).

. Emphasis in original; footnotes omitted.

. Emphasis added.

. Initially, the ALJ found that Shea "did not identify sitting at work as a causal factor” at all until 2003, concluding that her failure to "report prolonged sitting at work as contributing to her chronic pain while she was still employed suggests that prolonged sitting at work was not so significant and important a cause as to attach legal responsibility to her employer.” He amended die decision to reflect that Shea failed to report work-relatedness to a physician but did not otherwise amend the discussion.

. While I agree with the superior court that the ALJ’s decision can be reversed outright, the ALJ’s failure to discuss Shea’s explanation merits at a minimum a remand so the ALJ can discuss Shea's perfectly reasonable explanation of why she did not identify to her physicians that sitting at work, rather than simply sitting, was a causal factor in her increased pain. Shea argued at the administrative level that her complaints to her supervisor showed that Shea understood the link between her work and her increased pain.

. Dr. Smith testified that prolonged sitting at work aggravated Shea’s pain in two ways: by increasing it during work, after which the pain would return to baseline, and by increasing her baseline level of pain. When the ALJ asked a clarifying question, Dr. Smith affirmed that "there might be potentially temporarily more ... of an increase from [Shea's] baseline, but over time 5 or 10 percent.” Dr. Smith also testified that he did not think there would be “a cure” for Shea’s condition and that "this is something she’s likely to have to live with,”

. See Bylers Alaska Wilderness Adventures, Inc. v. City of Kodiak, 197 P.3d 199, 207 (Alaska 2008) ("[E]vidence is relevant if it tends to make the existence of a material fact more or less likely.” (citing Alaska R. Evid. 402)).

. Smith v. Univ. of Alaska, Fairbanks, 172 P.3d 782, 788 (Alaska 2007) ("Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " (quoting Circle De Lumber Co. v. Humphrey, 130 P.3d 941, 946 (Alaska 2006))).

. Indeed, the ALJ wrote that the State "did not attempt to prove that Ms. Shea’s pain was a psychological response to the original non-work-related ilioinguinal neuralgia and as such was not proximately caused by her employment.” This contradicts the ALJ’s reliance on the psychological aspect of Shea’s pain in rejecting her proximate cause argument.

. See, e.g., State, Dep’t of Commerce, Cmty. & Econ. Dev., Div. of Corps., Bus. & Prof'l Licensing v. Wold, 278 P.3d 266, 272, 274 (Alaska 2012) (observing that speculation by an expert was not substantial evidence); May v. State, Commercial Fisheries Entry Comm'n, 175 P.3d 1211, 1217 (Alaska 2007) ("CFEC’s determination that May did not prove a commercial harvest is based on speculation rather than substantial evidence,’’); Hoth v. Valley Constr., 671 P.2d 871, 874 (Alaska 1983) ("The mere possibility of another injury is not ‘substantial’ evidence to overcome the presumption of compensability.”).

. Cf. Irby v. Fairbanks Gold Mining, Inc., 203 P.3d 1138, 1142-43 (Alaska 2009) (relying on alternative legal grounds for affirming Board decision because Board ‘‘made adequate factual findings” to support alternative legal basis, so that there were no genuine factual disputes as to elements of alternative grounds); Bolieu v. Our Lady of Compassion Care Ctr., 983 P.2d 1270, 1275 (Alaska 1999) (stating that Board need only make findings about issues that are both material and contested and if Board "fails to make a necessary finding, [the court] cannot fill the gap” but must remand to Board (citing Stephens v. ITT/Felec Servs., 915 P.2d 620, 627 (Alaska 1996))).

. Seybert v. Alsworth, 367 P.3d 32, 36 (Alaska 2016) ("We will affirm on independent grounds not relied on by the superior court only when those grounds are established by the record as a matter of law." (citing Riley v. Simon, 790 P.2d 1339, 1343 n.7 (Alaska 1990); McGee v. State, 614 P.2d 800, 805 n.10 (Alaska 1980))).

. See Hester v. Pub. Emps.’ Ret. Bd., 817 P.2d 472, 476 n.7 (Alaska 1991).

. Shea II, 267 P.3d 624, 636 (Alaska 2011) (observing that under Alaska law, "even a five to ten percent contribution could suffice if 'reasonable persons would regard the injury as a cause of the disability and attach responsibility to it’ " (quoting Doyon Universal Servs. v. Allen, 999 P.2d 764, 770 (Alaska 2000))).

. 172 P.3d 782, 791 (Alaska 2007).

. Id.

. Id. (quoting 8 Arthur Larson & Lex K. Larson, Larson’s Workers’ Compensation Law § 130.06[2][e] (2006)).